IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DANNAIL OBHOF, | ) CASE NO.  1:23-CV-02000-SL |
| Plaintiff, | ) |
| vs. | ) JUDGE SARA LIOI |
| | ) UNITED STATES DISTRICT JUDGE |
| WARDEN HAROLD MAY, | ) MAGISTRATE JUDGE |
| | ) JONATHAN D. GREENBERG |
| Respondent. | ) |
| | ) **REPORT & RECOMMENDATION** |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Dannail Obhof ("Obhof" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. No. 1), and the Answer/Return of Writ. (Doc. No. 9.) Obhof is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State of Ohio v. Dannail J. Obhof*, Ashtabula County Court of Common Pleas, Case No. 2019 CR 509.  For the following reasons, the undersigned recommends that the Petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The Eleventh District Court of Appeals (hereinafter, the "appellate court") summarized the facts underlying Obhof's conviction as follows:

> {¶2}Appellant, Dannail Obhof, appeals his conviction and sentence from the Ashtabula Court of Common·Pleas. Appellant entered an *Alford* guilty plea to four counts of Rape, felonies of the first degree, in violation of R.C. 2907.02(A)(2)(b).

1

*State v. Obhof*, 2023-Ohio-408, 2023 WL 1960845 (Oh. Ct. App. Feb. 13, 2023).

## II.     Procedural History

**A.     Trial Court Proceedings**

On October 29, 2019, the Ashtabula County Grand Jury indicted Obhof on the following charges: 16 counts of rape, R.C. § 2941.148(A)(1)(b) with a sexually violent predator specification and a force specification, 11 counts of gross sexual imposition, R.C. § 2907.05(A)(4)(C)(2), and two counts of endangering children, R.C. § 2919.22(A)(E). (Doc. No. 9-1, Ex. 1.) Obhof entered pleas of not guilty to all 29 charges. (*Id*., Ex. 2.)

On November 22, 2019, the State filed an Amended Bill of Particulars in response to Obhof's request. (*Id*., Ex. 3.)

On February 25, 2020, two child witnesses were examined by counsel and the Court during a competency hearing. (*Id*., Ex. 4.) The Court found both witnesses competent to give testimony. (*Id*., Ex. 4 at p. 2.)

On June 15, 2020, the State filed a Motion *in Limine* to Preclude Defendant from Cross-Examining the Victims on Prior Sexual Abuse in Violation of the Rape-Shield Law. (*Id*., Ex. 5.) On August 27, 2020, the Court granted the Motion *in Limine*. (*Id*., Ex. 6.)

On October 6, 2020, Obhof and the State reached an agreement whereby Obhof would plead guilty under *North Carolina v. Alford*, 400 U.S. 25 (1970), to four counts of rape in exchange for the dismissal of the remaining counts of the indictment as well as the specifications. (Doc. No. 9-1, Ex. 7.) The parties stipulated to a mandatory sentence of 25 years. (*Id*., p. 3.) Obhof signed the written *Alford* plea. (*Id*., p.4.)

On October 7, 2020, the state trial court held a sentencing hearing. (Doc. No. 9-2.) The Court reviewed in detail the rights Obhof was waiving by entering his plea. (*Id*., pp. 6-32.) Obhof said he understood the rights he was waiving and had no questions. (*Id*.) When the Court asked the State if they

2

had anything further, the State responded ". . . just his sex offender registration requirements . . ." (*Id*., p. 30.) The Court responded that sex offender registration requirements would be addressed in connection with the sentencing. (*Id*.) The State provided a statement of the evidence that it would have presented had the matter proceeded to trial. (*Id*., pp. 34-35.) The Court found Obhoff made a knowing, intelligent, and voluntary waiver of his rights and a voluntary plea of guilty pursuant to *Alford* to the four counts. (*Id*., pp. 35-36.) The trial court accepted Obhof's plea, made a finding of guilty, and sentenced him to a mandatory term of 25 years in prison. (*Id*., p. 44.) The Court explained in detail that Obhof would be required to register as a tier three sex offender upon completion of his prison sentence. (*Id*., pp. 45-47.)

**B.    Direct Appeal**

On August 9, 2021, Obhof, *pro se*, filed a Notice of Appeal (Doc. No. 9-1, Ex. 10) as well as a Motion for Leave to File Delayed Appeal. (*Id*., Ex. 11.) On August 25, 2021, the State opposed the Motion. (*Id*., Ex. 12.) On August 25, 2021, the Court granted Obhof's Motion. (*Id*., Ex. 13.) On December 20 2021, the appellate court dismissed the appeal for failure to prosecute because Obhof failed to filed his merit brief by October 25, 2021. (*Id.,* Ex. 14.) On January 26, 2022, Obhof filed an Application for Reopening his direct appeal pursuant to App.R. 26(B), alleging ineffective assistance of counsel as the reason for not timely filing a merit brief. (*Id*., Ex. 15.) On February 18, 2022, the appellate court denied Obhof's Motion because he was precluded from alleging ineffective assistance of appellant counsel due to his proceeding *pro se*. (*Id*., Ex. 16.) On March 17, 2022, Obhof filed a Delayed Application for Reopening, asserting the trial court had appointed him counsel to represent him on appeal, and counsel failed to file the merit brief. (*Id*., Ex. 17.) On April 4, 2022, the appellate court granted Obhof's Motion. (*Id*., Ex. 18.)

In his appellate brief, he raised the following assignments of error:

I.    The Appellant's Alford plea is not valid since the trial court failed to obtain a sufficient factual basis for such plea.

3

> II. The Appellant's guilty plea was not knowingly and intelligently made because the trial court failed to inform him regarding the sex offender registration requirements at the time of the plea.

(Doc. No. 9-1., Ex. 19.) The State filed a brief in response. (*Id*., Ex. 20.)

On February 13, 2023, the appellate court affirmed Obhof's convictions. (*Id*., Ex. 21.)

On May 15, 2023, Obhof, proceeding *pro se*, filed a Notice of Appeal as well as a Motion for Leave to File Delayed Appeal with the Supreme Court of Ohio. (*Id*., Exs. 22, 23.) On July 5, 2023, the Supreme Court of Ohio granted Obhof's Motion, directing him to file a memorandum in support of jurisdiction within 30 days. (Id., Ex. 24.) On July 27, 2023, Obhof filed his Memorandum. (*Id*., Ex. 25.) In his Memorandum in Support of Jurisdiction, Obhof raised the following Propositions of Law:

> I. First, that the trial court failed to obtain a sufficient factual basis to accept his Alford plea.
>
> II. Second, that his plea was not knowingly and intelligently made because the trial court failed to inform him of his sex offender registration requirements at the time of his plea.

(*Id*.) On August 16, 2023, the State filed a Waiver of Memorandum in Response, indicating its intention not to file a response unless requested by the court. (*Id*., Ex. 26.)

On September 26, 2023, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4). (*Id*., Ex. 27.)

C. **Post-Conviction Filings**

On August 9, 2021, the same day as filing his direct appeal, Obhof, *pro se*, filed a Petition to Vacate or Set Aside Judgment of Conviction or Sentence. (Doc. No. 9-1, Ex. 28.) Obhof claimed ineffective assistance of counsel based on no timely appeal filed. (*Id*., Ex. 28, p. 2.) On August 26, 2021, the State filed Answer and Motion to Dismiss Defendant's Petition to Vacate or Set Aside Judgement of Conviction or Sentence. (*Id*., Ex. 29.) The State argued Obhof's claim is barred by the doctrine of res judicata and that Obhof did not receive ineffective assistance of counsel. (*Id*., Ex. 29, pp. 1-4.) On December 8, 2021, Obhof

4

filed a Motion in Opposition to State's Motion to Dismiss, arguing that his attorney should have filed a timely appeal and failed to do so. (*Id*., Ex. 30, p. 1-2.) On December 17, 2021, the State filed its Reply in Support of the State's Answer and Motion to Dismiss Defendant's Petition to Vacate or Set Aside Judgement of Conviction or Sentence, arguing the Obhof's beliefs and assumptions about what his counsel would do was insufficient to constitute deficient performance, and Obhof was granted leave to file a delayed appeal – so he received the relief he sought. (*Id*., Ex. 31, p. 2.) On December 27, 2021, the court granted the State's Motion to Dismiss and denied Obhof's Petition. (*Id*., Ex. 32.)

**D.     Federal Habeas Petition**

On October 13, 2023,[1] Obhoff filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**: The guilty plea was not knowingly intelligently made because the trial court failed to inform me regarding sex offender requirements.
>
> **Supporting Facts**: The guilty plea was not knowingly intelligently made because the trial court failed to inform me regarding sex offender registration requirements at the time of plea.
>
> **GROUND TWO**: The Alford plea is not valid since the trial court failed to obtain a sufficient factual basis for such plea.
>
> **Supporting Facts**: The guilty plea was not knowingly intelligently made because the trial court failed to inform me regarding sex offended registration requirements at the time of plea.

(Doc. 1.)

---

[1] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). While the Petition herein did not arrive at the Court for filing until October 13, 2023, Obhof states that he placed it in the prison mailing system on October 6, 2023. (Doc. No. 1 at 15.) Thus, the Court will consider the Petition as filed on October 12, 2023.

5

On May 7, 2024, Warden Harold May ("Respondent") filed his Return of Writ. (Doc. No. 9.) Obhof did not file a Traverse.

### III. Exhaustion and Procedural Default

**A.   Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms

7

sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v.LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

**B. Application to Petitioner**

Respondent argues Obhof's Petition must be dismissed because he failed to accomplish one complete round of state appellate review due to his direct appeal being dismissed for want of prosecution. (Doc. No. 9, at 14-20.) Respondent states Obhof's application for reopening his appeal was granted, which amounted to the court of appeals adjudicating Obhof's application to reopen and not adjudicating his direct appeal. (*Id*. at 17-18.) Respondent cites *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) for the proposition that "the underlying issues in Obhof's application to reopen are not on the merits." (Doc. No. 9 at 18.) Respondent argues ". . . Obhof's entire federal habeas petition is procedurally defaulted because his two habeas grounds were never presented on their merits on direct appeal in the state courts." (*Id*.)

The Court disagrees. In *Davie*, petitioner's substantive "acquittal first" claim was found procedurally defaulted. 547 F.3d at 312. Davie argued his "acquittal first" claim was first raised in his Rule 26(B) application for reopening and had therefore been properly substantively raised. *Id*. The Sixth Circuit disagreed, stating:

> the Ohio courts determined that Davie failed to demonstrate a "genuine issue" that his appellate counsel was ineffective for failing to raise [the "acquittal first"] claim, the courts refused to open Davie's direct appeal, thereby imposing a procedural bar to consideration of the claim. As a consequence, Davie's substantive "acquittal-first" claim is procedurally defaulted . . .

*Id.* Importantly, the Sixth Circuit stated, "If the application to reopen is granted, the case proceeds as on initial appeal." *Id*., citing Ohio App. R. 26(B)(7). Unlike in *Davie*, here, Obhof is not asserting a claim that was raised solely in his application to reopen. The claims Obhof raise here were raised on direct appeal in the state courts. In this case, Obhof's application to reopen was granted, and his case proceeded. The appellate court issued an opinion on the merits, which Obhof appealed to the Ohio Supreme Court, completing a round of state appellate review. (Doc. No. 9-1, Exs. 21, 22.) The Court recommends finding that Obhof's claims are not procedurally defaulted.

9

## IV. Review on the Merits

**A. Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v.Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005). Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012). *See also Lopez v.Smith*, ___ U.S. ___, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. See also *Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

11

fairminded disagreement." *Id*. at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

Contemplating an *Alford* plea, this Court explained:

> The Supreme Court has recognized that like any constitutional right, the right to trial can be waived. In *Alford*, it held that a defendant "may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even [though] he is unwilling or unable to admit his participation in the acts constituting the crime." 400 U.S. at 37. Before accepting an *Alford* plea, a court must determine that "there is a factual basis for the plea." *Id.* at 38 n.10
>
> A plea under *Alford* "is a guilty plea in all material respects." *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995). To comply with the Due Process Clause, a guilty plea must be "voluntary and knowing." *Boykin v. Alabama,* 395 U.S. 238, 243 n.5 (1969); *see King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). "A state court's determination that a guilty plea was valid is a factual finding entitled to a presumption of correctness on federal habeas review, rebuttable only by clear and convincing evidence. *Stewart v. Morgan*, 232 F. App'x 482, 490 (6th Cir. 2007).
>
> "A prisoner who has entered a guilty plea . . . and who later attempts to attack his judgment of conviction collaterally through a federal habeas corpus action is limited to raising only the issue of whether his guilty plea was knowing and voluntary." *Cubic v. Warden of Marion Corr. Inst.*, No. 12-cv-1472, 2014 WL 1270586, at *2 (N.D. Ohio Mar. 26, 2014). "A plea of guilty which is voluntarily and intelligently made satisfies the requirements of the Due Process Clause." *Id.* A defendant who pleads guilty waives "all 'non-jurisdictional defects,'" *i.e*, those "claims not logically inconsistent with the issue of factual guilt, as well as the right to contest the factual merits of the charges against him." *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982).

*Little v. Sheldon*, No. 3:20-CV-02527-BYP, 2023 WL 2666116, at *10 (N.D. Ohio Mar. 6, 2023).

**B.      Obhof's Petition Should be Denied on the Merits**

For the following reasons, it is recommended that Obhof's First and Second Grounds for Relief be denied. Both Obhof's claims stem from his assertion that his *Alford* plea was not "knowingly intelligently made". (Doc. No. 1 at 5, 7.) Ground One asserts the plea was not knowingly and intelligently made because the trial court did not inform him of sex offender registration requirements at the time of the plea. (*Id*. at 5.)

12

Ground Two alleges the plea was not knowingly and intelligently made because the trial court failed to obtain a sufficient factual basis for such plea. (*Id*. at 7.) Obhof does not explain how the appellate court failed the "contrary to" or "unreasonable application" prongs of 28 U.S.C. § 2254(d).

The appellate court noted the need to determine whether an *Alford* plea has been voluntarily and intelligently made to satisfy the requirements of the Due Process Clause, and recited the Ohio Supreme Court's guidance about how to reach that determination. *Obhof*, 2023 WL 1960845, *3-4, 6. Addressing Obhof's first assignment of error, the same as his Second Ground here, the appellate court explained that the State is required to provide a factual basis for the plea, found that "the State provided specific details of the four counts to establish a factual basis for each element of the offense" and noted that the record below contained an amended bill of particulars, offering strong evidence of Obhof's guilt. *Id*, at *7. The appellate court stated:

> {¶38} As noted above, we conduct a de novo review of whether a plea is knowingly, intelligently, and voluntarily made. *Siler*, 2011-Ohio-2326 at ¶ 12, quoting *Eckler*, 2009-Ohio-7064 at ¶ 48.
>
> {¶39} An *Alford* plea is a plea of guilty entered with a contemporaneous protestation of innocence. *State v. Karsikas*, 11th Dist. Ashtabula No. 2014-A-0065, 2015-Ohio-2595, ¶ 18. Although a plea may be entered knowingly and intelligently, the *Alford* plea "involves a rational calculation that is significantly different from the calculation made by a defendant who admits he is guilty * * *." *State v. Padgett*, 67 Ohio app.3d 332, 338, 586 N.E.2d 1194 (2d Dist. 1990). The trial court must inquire into and seek to "resolve the conflict between the waiver of trial and the claim of innocence." *Alford*, 400 U.S. at 38, fn.10.
>
> {¶40} Before accepting an *Alford* plea, a trial court "must ascertain that notwithstanding the defendant's protestations of innocence" the defendant has made a rational calculation that the plea bargain offered is in his or her best interest by avoiding the risks of a greater punishment if a jury returns a guilty verdict. *Wasilewski*, at ¶ 23, quoting *Padgett*, at 338.
>
> {¶41} In the context of *Alford*, the record must demonstrate the following:
>
> > (1) defendant's guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3)

13

> counsel's advice was competent in light of the circumstances surrounding the indictment (4) the plea was made with the understanding of the nature of the charges; and, (5) defendant was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, the guilty plea has been voluntarily and intelligently made.

*State v. Piacella*, 27 Ohio St.2d 92, 271 N.E.2d 852 (1971), syllabus.

{¶42} In addition to the above, an *Alford* plea requires a factual basis for the charges be provided to ensure that the defendant has made a rational calculation, based on the strength of the State's case, between the risk of trial and the consequences of pleading guilty. *See State v. Gil*, 11th Dist. Lake No. 2018-L-077, 2019-Ohio-839, ¶ 11; *Alford*, 400 U.S. at 38, fn.10.

{¶43} "[T]his court has accepted a brief description of the crimes committed as adequate to justify the entry of an *Alford* plea." *Gil*, at ¶ 11, citing *State v. Prinkey*, 11th Dist. Ashtabula No. 2010-A-0029, 2011-Ohio-2583, ¶ 24-25 (setting forth that a search warrant revealed evidence to substantiate recent and ongoing production of methamphetamine at defendant's property on the date and location indicated on the indictment); and *State v. Bilicic*, 11th Dist. Ashtabula No. 2017-A-0066, 2018-Ohio-5377, ¶ 14 (holding there is no requirement for the State to present "specific facts going to each element of a charge where a defendant enters an *Alford* plea.").

**\*7** {¶44} Appellant's brief extensively cites *State v. Hughes*, 4th Dist. Highland No. 20CA2, 2021-Ohio-111, which he claims supports his contention that the record did not contain a sufficient factual basis to justify the acceptance of his *Alford* plea. In *Hughes*, the trial court accepted an *Alford* plea after reviewing discovery materials and the defendant's criminal record. The Fourth District reversed because the record did not "include a presentation of the basic facts or circumstances surrounding the indictment." On appeal, the "discovery itself was not made part of the record," and the record did not contain a "bill of particulars upon which the trial court might discern the strength of the state's charges." *Id.* Therefore, the court of appeals could not "discern whether the state's discovery contained strong evidence of * * * actual guilt." *Id.*

{¶45} R.C. 2907.02(A)(1)(b) provides that:

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

14

> > (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
>
> {¶46} Here, the State provided specific details of the four counts to establish a factual basis for each element of the offense. The State provided the date ranges, details of the nature of the sexual conduct that appellant engaged in with each victim, and identified each victim separately by initials. The State said that the victims were not the spouse of appellant and that each was under 10 years old at the time of the offenses. The State said that it would prove that the victims knew appellant, could identify him, and that the offenses took place in Ashtabula County. The State provided strong evidence of appellant's guilt at the hearing.
>
> {¶47} The record below also contains an amended bill of particulars the State filed which asserts the date ranges of the offense, the particular nature of the sexual conduct appellant engaged in with each victim, appellant's relationship to each victim, the age of each victim, and that the offenses took place in Ashtabula County. In *Hughes,* the reviewing court could not establish strong evidence of actual guilt from the record. *Hughes, supra,* at ¶ 12. Here, the record – in addition to the factual statement the State provided at the plea hearing – does offer strong evidence of appellant's guilt in reference to each count and to each victim. This more than satisfies the requirements for the trial court to accept and enter appellant's *Alford* plea. *See Gil*, 2019-Ohio-839, at ¶ 11.
>
> {¶48} Accordingly, appellant's first assignment of error is without merit.

*Obhof*, 2023 WL 1960845, *6-7. Here, "[n]othing the appellate court said is *contrary to* any conclusion 'reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts.'" *Little*, 2023 WL 2666116, at *10, citing *Williams*, 529 U.S. at 412-413. Nor does the court's decision reflect an "unreasonable application" of a "governing legal principle from th[e] [Supreme] Court's decisions." *Id.* at 413. The appellate court identified the governing legal principles and reasonably applied the facts of Obhof's case – finding that the facts proffered during the plea hearing by the State provided sufficient factual details to support each count. *Obhof*, 2023 WL 1960845, *7. Moreover, the appellate court found the record contained an amended bill of particulars with further evidence supporting Obhof's guilt, was adequate to justify the *Alford* plea. *Id*. The appellate court's decision constituted an objectively reasonable application of federal law. *Williams*, 529 U.S. at 410-12.

15

Regarding Obhof's second assignment of error, his First Ground in the instant matter, the appellate court found the trial court only partially complied with the non-constitutional Crim.R. 11(C)(2)(a) maximum penalty advisement, by telling appellant that there were sex offender registration requirements during the plea hearing that the court would fully explain during sentencing. (*Id*. at *5.) Because of this partial compliance with Crim.R. 11(C)(2)(a), the appellate court explained Obhof had the burden to prove prejudice, "that he would not have otherwise entered his plea." (*Id*.) The appellate court found Obhof did not "assert prejudice in his brief and no apparent prejudice exists in the record" because the State mentioned the registration requirements, making Obhof aware, and he never objected or asked questions regarding the same. (*Id*.) The appellate court reasoned:

> {¶24} Crim.R. 11(C)(2)(a) provides that a trial court must determine that a defendant is pleading voluntarily and understands the maximum penalty involved before accepting a plea of guilty or no contest. The issue appellant raises is whether a full explication of the sex offender registration requirements are part of the "maximum penalty involved," which the court must determine the defendant understood when entering a plea.
>
> {¶25} However, the "maximum penalty involved" requirement in Crim.R. 11(C)(2)(a) is non-constitutional in nature. *Id.* at ¶ 23. When challenging a trial court's failure to address non-constitutional Crim.R. 11(C) requirements, a defendant must demonstrate either prejudice or that the trial court completely failed to comply with the applicable portion of Crim.R. 11(C). *Id.* at 14-15. To show prejudice under Crim.R. 11(C)(2)(a), a defendant must demonstrate that the plea would not have been entered "but for the trial court's failure to explain the sex-offender-classification scheme more thoroughly." *Id.* at ¶ 23.
>
> {¶26} A "complete failure to comply" with a non-constitutional requirement of Crim.R. 11 occurs when the court makes "no mention" of the requirement. *Id.*, at ¶ 15, citing *State v. Sarkozy,* 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22 (holding that a failure to mention postrelease control where the defendant was subject to a mandatory five years of postrelease control was a complete failure to comply with the requirements of Crim.R. 11).
>
> {¶27} In *Dangler, supra,* the Ohio Supreme Court recently resolved a conflict on the question of whether the trial court's failure to inform a defendant of all the penalties associated with a sex offender classification

16

imposed under R.C. Chapter 2950 constitutes a complete failure to comply with Crim.R. 11(C)(2)(a) and thereby renders the plea void where the defendant fails to show prejudice resulted. *Id.* at ¶ 9.

***5** {¶28} The Supreme Court concluded that the penalties set forth in R.C. Chapter 2950, while comprised of both punitive and remedial measures, "as a whole" constitute a penalty for purposes of Crim.R. 11. *Id.* at ¶ 20-22, citing *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108. Thus, a trial court need only advise that a defendant will be subject to the registration requirements of the statutory scheme to comply with the Crim.R. 11(C)(2)(a) maximum penalty advisement requirement. *Id.* at ¶ 22.

{¶29} The essential questions to be answered are simply: "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17.

{¶30} Applying the *Dangler* three-part test to the present case, we cannot conclude that the trial court fully complied with the non-constitutional Crim.R. 11(C)(2)(a) maximum penalty advisement. However, in this case the trial court did partially comply and appellant has not demonstrated any prejudice. First, the trial court did not specifically advise appellant about the specific registration requirements he would be subjected to as part of the potential maximum penalty of his plea. This failure, while not a complete failure to inform appellant of the maximum penalties associated with his plea "as a whole," did fall short of fully complying with Crim.R. 11(C). *See Id.* at ¶ 22. However, in addition to explaining other portions of the maximum penalty, the court did tell appellant that there were sex offender registration requirements during the plea hearing. The court said that it would fully explain the registration requirements during sentencing.

{¶31} Second, although the trial court partially complied with the requirement of the rule, the requirement was non-constitutional. Therefore, appellant bears the burden of showing prejudice – that he would not have otherwise entered his plea.

{¶32} Third, appellant has not asserted prejudice in his brief and no apparent prejudice exists in the record. The State referenced the sex offender registration penalties, and the trial court said it would address the sex offender registration requirements during sentencing. This demonstrates that appellant was at least aware that registration requirements were part of the maximum penalty involved prior to entering his plea. Neither appellant nor trial counsel objected or sought further information about the sex offender registration requirements at that time. Nothing in the record

> suggests that appellant would not have entered his plea "but for the trial court's failure to explain the sex-offender-classification scheme more thoroughly." *Id.* at ¶ 23.

*Obhof*, 2023 WL 1960845, *4-5.

Again, nothing the appellate court stated is contrary to a conclusion reached by the Supreme Court on a question or law, or based on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 413. Nor does the decision reflect an unreasonable application of federal law. *Id*. at 410-12. Here, the appellate court identified the legal principle, found that the trial court partially complied with Crim.R. 11(C)(2)(a), and determined Obhof then had the burden to prove prejudice due to this partial compliance. *Obhof*, 2023 WL 1960845, *5. The appellate court found Obhof did not assert prejudice in his brief and found no apparent prejudice in the record because the sex offender requirements were mentioned during the hearing, making him aware, and Obhof and his counsel never objected or sought more information. *Id*. The appellate court opinion reflects an objectively reasonable application of federal law. Obhof has not carried his burden by clear and convincing evidence to rebut the presumption that the appellate court correctly determined that the plea was valid. *Stewart*, 232 F. App'x at 490.

For the above reasons, Grounds One and Two fail on the merits.

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.

Date: April 18, 2025                                          *s/ Jonathan Greenberg*
                                                                              Jonathan D. Greenberg
                                                                              United States Magistrate Judge

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.** ***Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**